Dan Stormer, Esq. [S.B. #101967]
Brian Olney, Esq. [SB. #298089]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079
Emails: dstormer@hadsellstormer.com
bolney@hadsellstormer.com

Attorneys for Plaintiff
ERIC STONER

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

ERIC STONER, an individual,

Plaintiff,

v.

BAKKT, LLC, a Delaware Limited Liability Company; and Does 1-20, inclusive,

Defendant.

Case No.: 3:25-CV-05567-TLT

[Assigned to the Honorable Trina L. Thompson – Courtroom 9, 19th Floor]

**FIRST AMENDED COMPLAINT FOR;**
**1. VIOLATION OF CALIFORNIA LABOR CODE § 1102.5(B)**
**2. VIOLATION OF CALIFORNIA LABOR CODE § 1102.5(C)**
**3. VIOLATION OF CALIFORNIA LABOR CODE § 203;**
**4. VIOLATION OF CALIFORNIA LABOR CODE § 1198.5;**
**5. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

**DEMAND FOR JURY TRIAL**

Action Filed: April 7, 2025

**COMPLAINT**

Now comes ERIC STONER, Plaintiff in this action, and files this Complaint, and further alleges as follows:

**Parties to the Civil Action**

1. Plaintiff Eric Stoner ("Plaintiff") is a male adult natural person who is and was at all times mentioned herein a resident of the State of California.

2. Defendant Bakkt, LLC (hereinafter "Defendant," "Bakkt," or "the Company") was, at all times relevant to this Complaint, the employer of Plaintiff.

3. Plaintiff was employed by Defendant Bakkt in the County of Contra Costa in the State of California.

4. Defendant Bakkt does business in California, is registered with the California Secretary of State, and has employees, including members of its executive team, in California.

5. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 20 inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend his Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants are responsible in some manner for the occurrences alleged herein, and that the damages of Plaintiff alleged herein were proximately caused by these Defendants. Any reference to "Defendant" herein is intended to refer to Defendant and/or Does 1-20.

6. Plaintiff is informed and believes and thereon alleges that there exists, and, at all times relevant to this complaint, existed a unity of interests between Defendant and/or Does 1-20, such that any individuality and separateness between them has ceased, and Defendant and/or Does 1-20 are alter egos of each other and exerted control over each other. Adherence to the fiction of the separate existence of Defendant and/or Does 1-20 as distinct entities would permit an abuse of the corporate privilege and would sanction fraud and/or promote injustice.

7. Plaintiff is informed, believes, and thereupon alleges that, at all times material herein, each of the Defendants was the agent or employee of, and/or working in concert with, his/her co-

Defendants and was acting within the scope of such agency, employment, and/or concerted activity. Plaintiff alleges that to the extent that certain acts and omissions were perpetrated by certain Defendants, the remaining Defendant or Defendants confirmed and ratified said acts and omissions.

8. Whenever and wherever reference is made in this Complaint to any act or failure to act by a Defendant or Defendants, such allegations and references shall also be deemed to mean the acts and failures of each Defendant acting individually, jointly and severally.

**Venue and Jurisdiction**

9. Venue is proper because the actions and injuries giving rise to this Complaint took place in Contra Costa County, California, where Plaintiff was employed by Defendant Bakkt.

10. Defendant Bakkt is registered with the California Secretary of State to transact business in this State. Defendant transacts sufficient business with sufficient minimum contacts in California, has employees (including members of the executive team) across California, and otherwise intentionally avails itself of the California market through the advertising, marketing, and sale of products and services, so as to render the exercise of jurisdiction over Defendant by the California Court consistent with traditional notions of fair play and substantial justice.

11. This action places an amount in controversy as set forth in the complaint which exceeds $35,000.00.

**Facts Common to All Causes of Action**

12. Mr. Stoner is a former employee of Defendant Bakkt.
He began working for Bakkt in or around June 2022 as the Company's "Vice President of Business Development & Partnerships," which was essentially a sales role. For the majority of his tenure, Mr. Stoner reported to Mark Elliot, the Chief Marketing Officer and Chief Business Officer. Near the end of his employment, Mr. Stoner started reporting to Dan O'Prey, the Chief Product Officer.

13. Mr. Stoner did well in his employment. He received positive performance reviews in July 2022 and December 2022. In March 2023, he closed a significant deal with Caesar's Entertainment. The deal as a whole was expected to generate revenue to Bakkt of between five to ten million dollars per year within the first two years and as much as 50 million per year within five years, earning praise within the company including at a meeting attended by Mr. O'Prey. He received another positive

performance review on July 28, 2023.

14. Mr. Stoner's responsibilities at Bakkt included pursuing a potential deal with a financial services company called Fold to hire Bakkt as its vendor. Bakkt had previously explored a potential acquisition of Fold and had entered into a non-disclosure agreement during this exploratory period with Bakkt agreeing to "protect the confidentiality of all Confidential Information" it received from Fold, including trade secrets.

15. On August 15, 2023, a Bakkt Sales Enablement employee named Chris Salame-Albrigo forwarded an email chain to Mr. Stoner containing a contract between Fold and one of its vendors, Prime Trust, which was a competitor of Bakkt. The email chain contained a January 27, 2023, email from Mr. O'Prey to Sam Auch, a product manager at Bakkt who was uninvolved in sales but had worked on Mr. O'Prey's team designing new products. Mr. O'Prey's email stated "Confidential" and "FYEO" [For Your Eyes Only], and attached a contract between Fold and Prime Trust that included Prime Trust's proprietary pricing information. The next email in the chain was an email from Mr. O'Prey dated June 27, 2023, forwarding his January 27 email and the attached contract to Mr. Salame-Albrigo and Andrew Sabola, a sales employee at Bakkt.

16. After forwarding the email chain to Mr. Stoner on August 15, 2023, Mr. Salame-Albrigo told Mr. Stoner that Bakkt had obtained Prime Trust's pricing information from Fold without Fold's knowledge while Mr. O'Prey had been working on the potential acquisition of Fold. Mr. Stoner reasonably understood that the confidential pricing information in the contract was a trade secret of Prime Trust.

17. Mr. O'Prey repeatedly pressured Mr. Stoner to use Prime Trust's pricing rather than Bakkt's standard pricing in his negotiations with Fold in order to persuade Fold to replace Prime Trust with Bakkt. Mr. Stoner reasonably believed that using Prime Trust's confidential pricing information without Prime Trust's permission to gain a competitive advantage in Bakkt's negotiations with Fold was illegal. Mr. Stoner repeatedly raised concerns about using Prime Trust's confidential pricing information in this manner, including with Mr. Salame-Albrigo, Mr. Stoner's then-supervisor Mark Elliott, and with Mr. O'Prey.

18. Mr. Stoner soon learned that Mr. O'Prey had assigned another salesperson at Bakkt, Colleen

Rozanski, to work on the Fold contract, but had not told Mr. Stoner about this assignment. Around this same time, Mr. O'Prey began participating directly in communications between Fold and Ms. Rozanski while Mr. Stoner began getting cut out of these communications. Throughout his tenure at the Company, Mr. Stoner had never seen Bakkt assign two salespeople to work on the same account. Mr. Stoner reasonably understood the decision to diminish his responsibilities and undercut his relationship with Fold by assigning Ms. Rozanski to his account without even telling him was unlawful retaliation for Mr. Stoner's prior complaints and refusal to use Prime Trust's trade secrets in his negotiations with Fold. Mr. Stoner raised concerns with Mr. Elliott and Mr. Salame-Albrigo about the assignment of Ms. Rozanski to work on Mr. Stoner's account.

19. On or around August 25, 2023, Mark Elliott, the Chief Business Officer, gave notice of his resignation. Mr. O'Prey took over Mr. Stoner's team, and Mr. Stoner began reporting directly to him. Mr. O'Prey continued to pressure Mr. Stoner to use the confidential Prime Trust pricing information in Mr. Stoner's negotiations with Fold.

20. Mr. Stoner refused Mr. O'Prey's directives to use Prime Trust's confidential pricing information to gain a competitive advantage with Fold. On August 29, 2023, Mr. Stoner sent Bakkt's standardized pricing to his contact at Fold. Within a day or two, Mr. O'Prey sent a message to Mr. Stoner, essentially stating that Mr. Stoner should not be using the standardized pricing because he knew what Prime Trust's pricing was. Mr. O'Prey stated, in sum or substance, that Bakkt would lose its competitive advantage along with the opportunity to sign Fold as a client if Mr. Stoner used the standardized pricing and told Mr. Stoner he should send Fold new pricing that would match or beat the pricing in Prime Trust's contract.  Mr. Stoner refused.

21. Mr. Stoner felt increasingly uncomfortable working on the Fold account. Mr. Stoner handed off his remaining responsibility for the account to Ms. Rozanski and sent an email to Fold's CEO, Will Reeves, on September 5, 2023, introducing Ms. Rozanski as Mr. Reeve's primary point of contact at Bakkt.

22. On September 7, 2023, Mr. O'Prey fired Mr. Stoner. He was given no warning or any reason for the termination. Mr. Stoner had been scheduled to fly to Singapore for work the very next day.

23. Bakkt failed to pay Mr. Stoner all his unpaid wages at the time of his wrongful termination. Bakkt did not pay Mr. Stoner all his unpaid wages until around March 1, 2024.

24. Following his termination, Mr. Stoner repeatedly requested copies of his personnel records from Bakkt, including on September 8, September 11, and October 11, 2023. Bakkt failed to make the contents of Mr. Stoner's personnel records available for his inspection within 30 calendar days of his requests.

**<u>First Cause of Action</u>**

**Violation of California Labor Code § 1102.5(b)**

Against Defendant Bakkt and/or Does 1-20

25. By this reference, Plaintiff hereby incorporates each and every paragraph set forth above as though fully set forth at this place.

26. California Labor Code § 1102.5(b) provides that "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information . . . to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a local, state or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

27. Using a competitor's trade secret without their consent is unlawful. *See* Cal. Civ. Code §§ 3426.1-3426.11.

28. Reducing an employee's job responsibilities in retaliation for disclosing information that the employee reasonably believed to unlawful and/or because the employee refused to participate in an activity that would violate a state or federal statute or a local, state, or federal rule or regulation is unlawful. *See* Cal. Labor Code §§ 1102.5(b), 1102.5(c).

29. Mr. Stoner engaged in protected activity by repeatedly disclosing information he reasonably believed would violate a state or federal statute, rule, or regulation to persons with authority over him, and/or with authority to investigate, discover, or correct the violation or noncompliance, including the misappropriation of Prime Trust's trade secrets and the retaliatory

removal of his responsibilities for liaising with Fold.

30. Defendant retaliated against Mr. Stoner by engaging in adverse employment actions including removing his responsibility for liaising with Fold and terminating his employment.

31. Mr. Stoner's protected activities were a contributing factor to the adverse employment actions taken against him.

32. California Labor Code § 98.6(b)(1) provides that there is a "rebuttable presumption in favor of the employee's claim" if there is an adverse employment action within 90 days of the activity protected by Labor Code Section 1102.5 (here, refusing to unlawfully use third-party trade secret) . This presumption applies here because Mr. Stoner was terminated approximately one week after engaging in protected activity. The burden of proof is therefore on Bakkt to establish that the adverse employment action was not for a retaliatory reason.

33. Defendant's retaliatory adverse employment actions have been, and continue to be, a substantial factor in causing harm to Mr. Stoner.

34. As a direct and proximate result of Defendant's unlawful conduct, Mr. Stoner suffered and continues to suffer special damages including but not limited to loss of income and other damages to be proven at time of trial.

35. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer general damages including but not limited to shock, embarrassment, humiliation, emotional distress, stress and other damages to be proven at the time of trial.

36. The unlawful conduct alleged above was engaged in by the officers, directors, supervisors and/or managing agents of Defendant who were acting at all times relevant to this Complaint within the scope and course of their employment. Defendant is, therefore, liable for the conduct of said agents and employees under the Doctrine of Strict Liability.

37. Defendant committed the acts herein alleged maliciously, fraudulently and oppressively in conscious and willful disregard for Mr. Stoner's rights and such acts were committed by and/or ratified by, officers, directors, and/or managing agents of Defendant. Plaintiff is, therefore, entitled to recover punitive damages from Defendant in an amount sufficient to punish and deter Defendant's future conduct according to proof at trial.

38. As a result of the conduct of Defendant, Plaintiff was forced to retain an attorney in order to protect his rights. Accordingly, Plaintiff seeks the reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial.

**Second Cause of Action**

**Violation of California Labor Code § 1102.5(c)**

Against Defendant Bakkt and/or Does 1-20

39. By this reference, Plaintiff hereby incorporates each and every paragraph set forth above as though fully set forth at this place.

40. California Labor Code § 1102.5(c) provides that "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."

41. Using a competitor's trade secret without their consent is unlawful. *See* Cal. Civ. Code §§ 3426.1-3426.11.

42. Mr. Stoner engaged in protected activity by repeatedly refusing to use Prime Trust's confidential pricing information in his negotiations with Fold.

43. Defendant retaliated against Mr. Stoner by engaging in adverse employment actions including removing his responsibility for liaising with Fold and terminating his employment.

44. Mr. Stoner's protected activities were a contributing factor to the adverse employment actions taken against him.

45. California Labor Code § 98.6(b)(1) provides that there is a "rebuttable presumption in favor of the employee's claim" if there is an adverse employment action within 90 days of the activity protected by Labor Code Section 1102.5 (here, refusing to unlawfully use third-party trade secret). This presumption applies here because Mr. Stoner was terminated approximately one week after engaging in protected activity. The burden of proof is therefore on Bakkt to establish that the adverse employment action was not for a retaliatory reason.

46. Defendant's retaliatory adverse employment actions have been, and continue to be, a substantial factor in causing harm to Mr. Stoner.

47. As a direct and proximate result of Defendant's unlawful conduct, Mr. Stoner suffered and continues to suffer special damages including but not limited to loss of income and other damages to be proven at time of trial.

48. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer general damages including but not limited to shock, embarrassment, humiliation, emotional distress, stress and other damages to be proven at the time of trial.

49. The unlawful conduct alleged above was engaged in by the officers, directors, supervisors and/or managing agents of Defendant who were acting at all times relevant to this Complaint within the scope and course of their employment. Defendant is, therefore, liable for the conduct of said agents and employees under the Doctrine of Strict Liability.

50. Defendant committed the acts herein alleged maliciously, fraudulently and oppressively in conscious and willful disregard for Mr. Stoner's rights and such acts were committed by and/or ratified by, officers, directors, and/or managing agents of Defendant. Plaintiff is, therefore, entitled to recover punitive damages from Defendant in an amount sufficient to punish and deter Defendant's future conduct according to proof at trial.

51. As a result of the conduct of Defendant, Plaintiff was forced to retain an attorney in order to protect his rights. Accordingly, Plaintiff seeks the reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial.

## Third Cause of Action

**Wrongful Termination in Violation of Public Policy**

Against Defendant and/or Does 1-20

52. By this reference, Plaintiff hereby incorporates each and every paragraph set forth above as though fully set forth at this place.

53. Mr. Stoner complained about and refused to engage in illegal conduct that violated the public policies of California as expressed in, *inter alia*, California Labor Code §§ 1102.5(b) and 1102.5(c) and California Civil Code §§ 3426.1-3426.11.

54. Defendant wrongfully terminated the employment of Plaintiff in violation of the public policy of the State of California as is set forth herein and other applicable provisions of law.

55. The conduct of Defendant in terminating Plaintiff was contrary to the interests of the state and public policy, as embodied in the following laws, statutes and regulations, among others: California Labor Code §§ 98.6, 1102.5(b), and 1102.5(c) and California Civil Code §§ 3426.1-3426.11.

56. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer special damages including but not limited to past and future loss of income and other damages to be proven at time of trial.

57. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer general damages including but not limited to shock, embarrassment, humiliation, emotional distress, stress and other damages to be proven at the time of trial.

58. The unlawful conduct alleged above was engaged in by the officers, directors, supervisors and/or managing agents of Defendant who were acting at all times relevant to this Complaint within the scope and course of their employment. Defendant is, therefore, liable for the conduct of said agents and employees under the Doctrine of Strict Liability.

59. Defendant committed the acts herein alleged maliciously, fraudulently and oppressively in conscious and willful disregard for Plaintiff's rights, and such acts were committed by and/or ratified by, and or were committed with the knowledge of employees' lack of fitness in the workplace but were allowed to proceed, by officers, directors, and/or managing agents of Defendant. Plaintiff is, therefore, entitled to recover punitive damages from Defendant in an amount according to proof at trial.

## **Fourth Cause of Action**

**Violation of Labor Code § 203**

Against Defendant and/or Does 1-20

60. By this reference, Mr. Stoner hereby incorporates each and every paragraph set forth above as though fully set forth at this place.

61. At all relevant times, Bakkt was Mr. Stoner's employer.

62. At the time of his termination, Mr. Stoner was owed unpaid wages.

63. Bakkt failed to pay Mr. Stoner these funds for more than 30 days after his termination.

64. Plaintiff is entitled to statutory damages under California Labor Code § 203(a).

**Fifth Cause of Action**

**Violation of Labor Code § 1198.5**

Against Defendant and/or Does 1-20

65. By this reference, Mr. Stoner hereby incorporates each and every paragraph set forth above as though fully set forth at this place.

66. At all relevant times, Bakkt was Mr. Stoner's employer.

67. Mr. Stoner made a request to Bakkt to receive a copy of his personnel file.

68. Bakkt failed to provide, or permit Mr. Stoner to copy or inspect, a complete copy of his personnel file within 30 days of Mr. Stoner's request.

69. Plaintiff is entitled to statutory damages under California Labor Code § 1198.5(k) and reasonable attorney's fees.

**Prayer For Relief**

1. For special and general damages;

2. For past and future lost income and benefits, including the tax gross-up of these amounts;

3. For emotional distress damages;

4. For an award of statutory penalties pursuant to California Labor Code §§ 203(a) and 1198.5(k);

5. For costs of suit incurred herein;

6. For reasonable attorneys' fees pursuant to Labor Code §§ 1102.5(j) and 1198.5(l), Code of Civil Procedure § 1021.5, and all other applicable statutes;

7. For punitive damages;

8. For declaratory and injunctive relief;

9. For prejudgment and post-judgment interest as available by law; and

10. For such other and further relief as this Court may deem just and proper.

/ / /

/ / /

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury in this action.

Dated: May 15, 2026

Respectfully Submitted,

HADSELL STORMER RENICK & DAI LLP

By: /s/ - Brian Olney
Dan Stormer
Brian Olney
Attorneys for Plaintiff,
ERIC STONER